# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

United States of America,

                Plaintiff,        Case No. 14-cr-20699-2

v.                               Judith E. Levy
                                    United States District Judge

Carlos Romero-Lebron,

                Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO VACATE SENTENCE [80], DENYING MOTION FOR COMPASSIONATE RELEASE OR REDUCTION OF SENTENCE [129], DENYING AS MOOT MOTION FOR STATUS UPDATE [135], AND DENYING <u>SUPPLEMENT MOTION/ LETTER [162]</u>

Before the Court is Defendant[1] Carlos Romero-Lebron's motion to vacate his sentence (ECF No. 80), motion for compassionate release or reduction of sentence (ECF No. 129), motion for status update (ECF No. 135), and supplemental motion/letter (ECF No. 162.) For the reasons set forth below, Defendant's four motions are denied.

_____

[1] Defendant is also referred to as "Petitioner" in this Opinion and Order.

## I.    Procedural Background

On September 13, 2017, the Court imposed a judgment of conviction on Defendant for violating 21 U.S.C. §§ 841(b)(1)(A) and 846, conspiracy to distribute 1 kilogram or more of heroin. (ECF No. 55.) The Court sentenced Defendant to 120 months' imprisonment. (*Id.* at PageID.203.) He is currently incarcerated at FCI Allenwood in White Deer, Pennsylvania.

On February 25, 2020, Defendant filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (ECF No. 80.) His motion contains one ground for the relief he seeks: "Petitioner's constitutional due process rights were violated when he was sentenced to 120 months' imprisonment rather than 87 months as his lawyer promised to him." (ECF No. 80, PageID.349.) He argues that his counsel was "ineffective for failing" to raise this discrepancy with the Court. (*Id.*) Defendant acknowledges that he did not raise this issue in his direct appeal. Defendant also acknowledges that he did not seek post-conviction relief on this ground. (*Id.*)

The United States filed a response in opposition to Defendant's motion on March 18, 2020. (ECF No. 84.) Upon Defendant's request, the

2

Court extended Defendant's reply deadline to July 15, 2020. (ECF No. 86.) Defendant then filed a second motion for an extension of his reply deadline. In it, he asked the Court to hold his § 2255 motion in abeyance until his prison's COVID-19 lockdown was lifted. The Court granted Defendant's motion. (ECF No. 95.) The Court lifted the stay in June 2021 and Defendant's new reply deadline was set for July 23, 2021. (ECF No. 125.)

On July 21, 2021, Defendant filed a motion for compassionate release or reduction of sentence. (ECF No. 129.) In it, Defendant argues that he is 50 years old with an "extensive medical record and health issues." (*Id*. at PageID.878.) He argues that the COVID-19 pandemic, combined with his medical conditions and age, constitute extraordinary and compelling reasons justifying his release. (*Id*. at PageID.878–880.)

On August 16, 2021, the government filed a response in opposition to Defendant's motion for compassionate release. (ECF No. 132.) On September 21, 2021, Defendant, through counsel, filed a reply in support of his compassionate release motion. (ECF No. 137.)

On September 3, 2021, Defendant filed a pro se motion for a status update. (ECF No. 135.) And on April 18, 2023, he filed a pro se supplemental motion/letter. (ECF No. 162.)

## II. Discussion

### A. Defendant's Motion to Vacate

#### 1. Background

As set forth above, Defendant's motion to vacate argues that his counsel promised him that the sentence imposed under the plea agreement would be 87 months. Defendant, however, was sentenced to 120 months' imprisonment. This, he argues, is a due process violation and his counsel was ineffective for failing to raise this issue with the Court. (ECF No. 80, PageID.349, 364–367.)

Defendant states that he "never expected a managerial role enhancement in his sentence, neither [did he] expect[] that an amount of drug greater than one kilogram but less than three kilograms would be considered to enhance his sentence by 4-levels." (*Id.*) This enhancement, Defendant argues, "had a dramatic effect" on Defendant's sentence, because it represented "an additional 33 months" of prison time. (*Id.* at PageID.365–366.) Accordingly, he argues, his counsel's failure to advance

4

a due process violation argument is "manifestly unreasonable under an objective standard." (*Id.* at PageID.366.)

In response, the government argues that:

The record plainly contradicts Romero-Lebron's recent allegations that his counsel promised him he would be sentenced to 87 months if he pleaded guilty. The record establishes that Romero-Lebron was advised multiple times that he would be sentenced to a minimum of 120 months if he pleaded guilty. The record further establishes that Romero-Lebron understood this and agreed to plead guilty. The record is also absent of any implication or reference that Romero-Lebron's sentence would be anything less than 120 months if he pleaded guilty.

The only evidence Romero-Lebron offers to support his position is the allegation itself that Romero-Lebron now makes in his § 2255 motion. More than three years after he pleaded guilty, he makes this allegation for the first time despite having multiple prior opportunities to do so.

(ECF No. 84, PageID.379.)

The government's brief also sets forth portions of the plea hearing transcript, which indicate that Defendant clearly understood that the minimum length of his sentence was 120 months. For example, the Court asked Defendant several times, and in several different ways, whether he had been "promised anything other than what's in the plea agreement concerning either the plea agreement or your sentence in order for [*sic*]

to get you to plead guilty[.]" (*Id.* at PageID.375; *and see id.* at PageID.376.) Defendant responded that he had not been promised anything other than what was set forth in the plea agreement. (*Id.*) The Court and the prosecutor also stated several times during the hearing that the mandatory-minimum sentence for Defendant was 120 months' imprisonment. (*Id.* at PageID.381–382.) Defendant confirmed on the record that he understood this fact. (*Id.*)

### 2. Legal Standard

The "two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). "A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered [a] constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have plead guilty." *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005).

As the Sixth Circuit set forth in *Humphress*, "a court need not determine whether counsel's performance was deficient before examining

the prejudice suffered by the defendant ... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id*. at 859 (citing *Strickland*, 466 U.S. at 697).

### 3. Analysis

For the reasons set forth below, Defendant has neither demonstrated that his counsel rendered a constitutionally deficient performance, nor has he demonstrated that but for his counsel's deficient performance, he would have plead guilty.

As to the first prong of *Strickland*—that Defendant demonstrate that his counsel rendered a constitutionally deficient performance—Defendant has not met his burden.

In a different Sixth Circuit ineffective assistance case, the Court found that a lawyer's failure to convey a plea offer to the defendant constituted ineffective assistance. *See Griffin v. U.S.*, 330 F.3d 733, 739 (6th Cir. 2003). In *Griffin*, the defendant proceeded to trial, was convicted, and was then sentenced to 13 years imprisonment. He then obtained new counsel for his appeal. Before the oral argument on the defendant's appeal, the prosecuting attorney mentioned to the defendant's appellate counsel that he was surprised the defendant did

7

not accept the plea offer for 5-years' imprisonment in light of the longer sentence the defendant faced after trial. This was the first time the defendant learned about the plea offer. The defendant sought habeas relief. The Sixth Circuit found that, "[a] defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel under the Sixth Amendment and satisfies the first element of the *Strickland* test." *Id*. at 737.

In another Sixth Circuit ineffective assistance case involving a plea agreement, the defendant's counsel advised the defendant of a pretrial offer, however, the lawyer made a significant calculation error. *See Magana v. Hofbauer*, 263 F.3d 542 (6th Cir. 2001). In *Magana*, the defendant was convicted and sentenced to two mandatory consecutive terms of ten-to-twenty years' imprisonment. He later argued in a habeas petition that his attorney advised him to turn down a plea that would have dismissed his exposure to one of the charges carrying a consecutive term. The defendant's counsel advised the defendant to do so based on the erroneous belief that the maximum sentence upon conviction was two ten-year concurrent (not consecutive) sentences. The Sixth Circuit held that the "large disparity" in the prison sentences between what the

defendant was offered in plea negotiations (ten-to-twenty years maximum total) and exposed to at trial (two ten-to-twenty year concurrent sentences, which equaled a potential sentence of up to forty years' imprisonment) is an "objective factor" weighing in favor of finding ineffective assistance of counsel.

Here, there is no evidence that Defendant's counsel failed to advise him of a plea offer. Nor is there any evidence aside from Defendant's allegations, that Defendant's counsel incorrectly advised him of the minimum sentencing exposure set forth in the plea agreement. Rather, the record clearly shows that Defendant understood that the mandatory minimum set forth in the plea agreement was 120 months.

As background, there are some facts in the record referencing the time period of 87 months. However, there are no facts demonstrating that Defendant's counsel advised or promised him an 87-month sentence. The government's sentencing memorandum states that, before Defendant's guilty plea on October 24, 2016, the parties believed that the sentencing guideline range was "87–108 months, or 120 months due to the mandatory minimum sentence that must be imposed." (ECF No. 52, PageID.145.) However, on that same day, October 24, 2016, Defendant

signed the Rule 11 plea agreement. (ECF No. 54.) The plea agreement states that Defendant's guideline range and mandatory minimum sentence began at 120 months. (*See id*. at PageID.180, 182, 183, 185.) As set forth above, during the hearing, Defendant confirmed that he understood 120 months was the time set forth in his agreement and that no one made him  any other promises. Accordingly, the record contradicts Defendant's argument that he thought his minimum sentence was 87 months. Defendant has not provided any other evidence, such as an affidavit or the like, to support his argument. Accordingly, Defendant does not meet the first prong of the *Strickland* standard.

Moreover, Defendant has not demonstrated the second *Strickland* prong, which is that, but for counsel's ineffective performance, Defendant would not have accepted the plea agreement at all and instead would have gone to trial.

Defendant argues that the remedies available to him are the imposition of an 87-month sentence "or the opportunity to withdraw the plea. . . It is up to the defendant to choose. Petitioner in this case requests to be sentenced according to the promise made by his defense attorney." (ECF No. 80, PageID.367.)  Defendant is incorrect—it is not a defendant's

choice to take a lesser sentence. Rather, under the standard set forth in *Strickland*, Defendant must indicate that he suffered prejudice and would have otherwise gone to trial, a position that Defendant repudiates.

Defendant cites to *Santobello v. New York* for the proposition that he may choose whether to withdraw his plea or accept the shorter sentence. 404 U.S. 257 (1971). *Santobello*, however, is not a § 2255 case, nor was the Defendant in that case held to the same prejudice standard as set forth in *Strickland*. In *Santobello*, the defendant was indicted for two felonies. The defendant entered a not guilty plea to both counts. *Id*. at 258. Then, after negotiations, the defendant (through counsel) and the prosecutor agreed that the defendant would enter a plea of guilty to a lesser charge. *Id*. The defendant did so and confirmed that his plea of guilty was voluntary. *Id*.

After several delays, and before the sentencing hearing took place, the defendant acquired new counsel. *Id*. The new counsel immediately moved to withdraw the guilty plea. *Id*. The motion was accompanied by an affidavit signed by the defendant that he did not know the evidence against him was obtained as a result of an illegal search. *Id*. The court denied the motion to withdraw the plea. *Id*. at 259. After more delays,

11

during which the case was reassigned to a different judge and prosecutor, the defendant attended his sentencing hearing where the new prosecutor requested a completely different sentence that was not part of the plea discussions. *Id*. The judge imposed the sentence recommended by the new prosecutor, and the defendant appealed. *Id*.

The Supreme Court ultimately remanded the case for the defendant to be resentenced by a different judge and for that court to determine whether the circumstances should permit the defendant to withdraw his guilty plea altogether. *Id*. at 262–63. The Court cited the fact that the case "represents another example of an unfortunate lapse in orderly prosecutorial procedures, in part, no doubt, because of the enormous increase in the workload of the often understaffed prosecutor's offices." *Id*. at 260.

Defendant's case here bears no resemblance to the facts of *Santobello*. There is no allegation, nor is there any evidence otherwise, that Defendant's case was improperly handled by anyone in the criminal justice system or that Defendant was deprived of "fairness in securing agreement between an accused and a prosecutor." *Id*. at 261.

Defendant, therefore, cannot rely on *Santobello* to argue that he can elect an 87-month sentence rather than demonstrate prong two of *Strickland*. Rather, he must set forth that he would not have accepted the plea agreement altogether, which he does not do in his motion. Accordingly, Defendant has not demonstrated either element of *Strickland* and his motion to vacate is denied.

## B.    Defendant's Motion for Compassionate Release

Next, Defendant filed a motion for compassionate release due to the COVID-19 pandemic. His motion is denied for the reasons set forth below.

### 1. Legal Standard

Compassionate release motions require a "three-step inquiry." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020)). First, "the court must 'find' that 'extraordinary and compelling reasons warrant [a sentence] reduction.'" *Id.* (alteration in original) (quoting *Jones*, 980 F.3d at 1101). Second, the Court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (quoting *Jones*, 980 F.3d at 1101). Third, the Court must "consider[] all relevant sentencing factors listed in 18 U.S.C. §

13

3553(a)." *Id.* (alteration in original) (quoting *Jones*, 980 F.3d at 1101). "If each of those requirements are met, the district court 'may reduce the term of imprisonment,' but need not do so." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

### 2. Analysis

Defendant argues that the "extraordinary and compelling reasons" that warrant a modification of his sentence to supervised release, home confinement, or reduction of his sentence are the following: that the COVID-19 virus is mutating and re-infection with unknown outcomes is possible, and that Defendant suffers from health conditions that put him at a higher risk for a negative outcome from COVID-19. For the reasons set forth below, Defendant does not present "extraordinary and compelling reasons" for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

Sixth Circuit precedent forecloses Defendant's argument that the presence of COVID-19 itself is an "extraordinary and compelling reason" for release because Defendant has access to and has received COVID-19 vaccines. (*See* ECF No. 134 *SEALED* (medical records).) The Sixth Circuit has endorsed the Seventh Circuit's holding that "for people living

14

in close quarters, vaccines offer relief far more effective than a judicial order." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)).

The COVID-19 vaccine is available to all inmates in the Federal Bureau of Prisons, and Defendant has received the vaccine. *See* COVID-19 Coronavirus, Federal Bureau of Prisons, https://perma.cc/U3FJ-WV46 (December 5, 2022). The Sixth Circuit has held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021) (quoting *Lemons*, 15 F.4th at 751).[2] Although Defendant has identified certain health risks that the

---

[2] The Sixth Circuit has "cast doubt on a defendant's ability to meet Section 3852's [sic] 'extraordinary and compelling reasons' requirement following their inoculation against COVID-19." *United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *3 (6th Cir. Nov. 18, 2021) (quoting *Lemons*, 15 F.4th at 749). The Sixth Circuit observed that "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Id.* (quoting *Lemons*, 15 F.4th at 751). Courts in this Circuit have also refused to find extraordinary and compelling medical circumstances when a defendant declines the COVID-19 vaccine.

CDC has identified as potentially putting him at greater risk of severe illness from COVID-19 (*i.e.*, age 50+, asthma, obesity), Defendant has also been offered and has availed himself of the most significant prevention tool identified by the CDC: a COVID-19 vaccination. *See* CDC, COVID-19 Underlying Medical Conditions, https://perma.cc/DU4N-QLEK (April 12, 2023); *and see* CDC: Benefits of Getting Vaccinated, https://perma.cc/5G5A-9YJJ ("How to be best protected: As with vaccines for other diseases, people are best protected when they stay up to date with the recommended number of doses, including bivalent boosters, when eligible.").

---

See *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at \*2 (E.D. Mich. Mar. 25, 2021) (denying compassionate release in light of the COVID-19 pandemic to a prisoner who declined to be vaccinated, without justification, because of hesitance "to provide prisoners an incentive to increase their risk of contracting COVID-19 and developing severe symptoms."), *aff'd*, 2021 WL 4771125 (6th Cir. Aug. 9, 2021); *United States v. Manderfield*, No. 16-20817, 2021 WL 2476577, at \*1 (E.D. Mich. June 17, 2021); *United States v. Goston*, No. 15-20694, 2021 WL 872215, at \*2 (E.D. Mich. Mar. 9, 2021); *United States v. Macgregor*, No. 15-20093, 2021 WL 1378786, at \*1 (E.D. Mich. Mar. 12, 2021); *United States v. Ervin*, No. 14-000195 (M.D. Tenn. Mar. 5, 2021) (Richardson, J.).

Therefore, the danger currently posed to Defendant by COVID-19 at FCI Allenwood is not an extraordinary and compelling circumstance that warrants a reduction in sentence. The Court need not reach steps two and three of the compassionate release inquiry because step one is not met. *Elias*, 984 F.3d at 519 ("district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").[3]

## C.   Defendant's Motion for Status Update

Defendant moved for a status update from the government. (ECF No. 135.) Because Defendant's motions are addressed in this Opinion and Order, the motion for a status update is denied as moot.

---

[3] The government also argues that Defendant's motion should be dismissed because he has not satisfied the exhaustion requirement for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 132, PageID.893.) Specifically, although Defendant states that he requested compassionate release from FCI Allenwood's Warden, he did not support that request with the appropriate facts. (*Id.* at PageID.900.) The Court need not reach the issue of whether Defendant appropriately exhausted administrative remedies because Defendant's motion fails for the reasons set forth above.

**D.    Defendant's Supplemental Motion**

On April 25, 2023, Defendant filed a supplemental motion in a letter format, in which he raises three issues. (ECF No. 162.) For the reasons set forth below, Defendant's supplemental motion is denied.

Defendant's first argument is that the Bureau of Prisons ("BOP") is wrongfully denying him participation in certain programs such as residential drug treatment programs, that could reduce his sentence on the basis that his detention order disqualifies him from participating. He argues that his exclusion from such programs constitutes an extraordinary and compelling reason to justify a sentence reduction. (ECF No. 162, PageID.1187–1188.)

18 U.S.C. § 3621(e) sets forth that certain incentive programs, such as residential drug treatment programs, the successful completion of which may result in a sentence reduction of not more than one year. 28 C.F.R. § 550.50 sets forth the administration of BOP's drug abuse treatment programs and provides that the BOP director has the discretion to exclude certain categories of inmates from eligibility for early release. The Supreme Court has upheld the BOP's discretion to deny inmates' participation in programs designed to potentially reduce a

term of imprisonment. *See Lopez v. Davis*, 531 U.S. 230, 240 (2001); *and see Fortino v. Hemingway*, 21 F. App'x 245, 247 (6th Cir. 2001) (stating that the "BOP director has discretion to establish additional criteria that make certain categories of prisoners ineligible for early release."); *and see McLean v. Crabtree*, 173 F.3d 1176 (9th Cir. 1999), *amended on denial of rehearing, certiorari denied*, 528 U.S. 1086 (finding that BOP's exclusion of prisoners under INS detention orders is a permissible exercise of BOP's discretion in administering the drug treatment program that neither violates the Due Process Clause of the Fifth Amendment nor the Equal Protection Clause of the Fourteenth Amendment.) Accordingly, the Court denies Defendant's first argument in his supplemental motion.

Defendant's second argument in his supplemental motion is that his placement in FCI Allenwood exposes him to conditions that are "significantly more rigorous" than they would be in a lower-security facility. Defendant argues that he is eligible to be placed in a lower-security facility, but he was transferred to FCI Allenwood, which is medium-security. FCI Allenwood is a long distance from his family, and therefore he has not received visits from them which he could have at a

19

lower-security facility closer to his home. This, he argues, has caused him hardship justifying a reduction in sentence. (*Id.* at PageID.1189.)

The BOP has discretion to designate an inmate's prison placement. *See* 18 U.S.C. § 3621(b) (stating that the BOP "shall designate the place of the prisoner's imprisonment and shall . . . place the prisoner in a facility as close as practicable to the prisoner's primary residence, and to the extent practicable, in a facility within 500 driving miles of that residence.")

Defendant has not set forth a colorable claim, nor has he supplied any evidence in support of his claim, that BOP is in violation of § 3621(b) or otherwise abusing its discretion in a manner violative of the law by maintaining Defendant's placement at FCI Allenwood. Without more information, the Court denies Defendant's second argument in his supplemental motion.

Defendant's third argument in his supplemental motion is that the conditions at Moshannon Valley, where he was incarcerated during the pandemic, were "deplorable." (*Id.* at PageID.1190.) Since then, Defendant has been transferred to FCI Allenwood where he has experienced "even hard[er] [d]raconian [m]easures," including 24-hour lock downs, showers

20

only every four days, no phone calls, e-mails, or social visits, no commissary, no recreation, no educational programs, and no vocational training or psychological counseling (*Id*. at 1190–1191.) Defendant states that FCI Allenwood is still being operated on "a [m]odified [s]chedule." (*Id*. at PageID.1191.) He cites the case of another prisoner at FCI Allenwood who was granted compassionate release and argues that he should be granted the same relief as that prisoner.

In the case Defendant cites, *United States v. Robert Banks*, No. 1:99-cr-01048-DC, 2022 WL 16549304 (S.D.N.Y. Oct. 31, 2022), the district court granted the defendant compassionate release because he had proffered several reasons in his motion that, when considered together, constituted extraordinary and compelling reasons justifying his release. These reasons included that, for example, the defendant suffered from multiple health conditions that put him at risk for severe illness from COVID-19, had zero disciplinary infractions during his period of over 23 years of incarceration, had an "exemplary record of rehabilitation, education, and leadership among his peers," and that his mother and son were in failing health. The court included in its list the "difficult" conditions at FCI Allenwood but did not grant compassionate

21

release on this basis alone. In fact, the *Banks* court noted that it was "unclear" whether any of these reasons alone would be extraordinary and compelling enough to warrant release.

This case is distinguishable from *Banks* in many regards. First, Defendant's COVID-19-based arguments for compassionate release have already been rejected for the reasons set forth above. Second, Defendant has not set forth similar compelling reasons as the defendant in *Banks* (such as his successful rehabilitation, a decades-long sentence already served with no disciplinary infractions, or family members in ill health). Rather, Defendant seeks to have this Court release him because the *Banks* court found that the conditions at FCI Allenwood were "difficult." While the Court is sympathetic to Defendant's wish to have his sentence set aside, the reasons he has provided are not sufficient to justify his release. Accordingly, Defendant's supplemental motion is denied.

## III.  Conclusion

In conclusion, Defendant's motion to vacate is denied. (ECF No. 80.) His motion for compassionate release is denied. (ECF No. 129.) Defendant's motion for a status update is denied as moot. (ECF No. 135.)

And Defendant's Supplement Motion/Letter is denied as moot. (ECF No. 162.)

IT IS SO ORDERED.

Dated: May 10, 2023              s/Judith E. Levy
     Ann Arbor, Michigan         JUDITH E. LEVY
                                 United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 10, 2023.

                                 s/William Barkholz
                                 WILLIAM BARKHOLZ
                                 Case Manager